## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRANDY JAN DONALDSON MILLER** | § § § | **PLAINTIFF** |
| **v.** | § § | **Civil No. 1:20-cv-00194-HSO-RPM** |
| **COMMISSIONER OF SOCIAL SECURITY** | § § § | **DEFENDANT** |

## ORDER OVERULING PLAINTIFF'S OBJECTION [19], ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [18], AND DISMISSING CASE WITH PREJUDICE

BEFORE THE COURT is Plaintiff Brandy Jan Donaldson Miller's Objection [19] to United States Magistrate Judge Robert P. Myers, Jr.'s Report and Recommendation [18], which recommends affirming the decision of Defendant Commissioner of Social Security. Defendant Commissioner of Social Security has filed a Notice [21] of No Response, indicating an intent not to respond to Plaintiff's Objection [19].

After due consideration of the Report and Recommendation [18], Plaintiff's Objection [19], and relevant legal authority, the Court finds that Plaintiff's Objection [19] should be overruled, that the Magistrate Judge's Report and Recommendation [18] should be adopted in its entirety as the finding of this Court, and that the decision of Defendant Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income should be affirmed.

## I.  BACKGROUND

Plaintiff Brandy Jan Donaldson Miller ("Plaintiff" or "Miller") filed this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1386(c)(3) seeking judicial review of the denial by Defendant Commissioner of Social Security ("Defendant" or "Commissioner") of her application for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. Compl. [1]. Miller filed her application on September 27, 2017, asserting that she became disabled on August 12, 2016. Admin. R. [12] at 87-88. Miller is a high school graduate who completed two years of college and worked as a pharmacy technician until 2013. *Id.* at 238. Miller claimed that she suffered from five conditions that prevented her from working: (1) systemic lupus erythematosus ("lupus"); (2) rheumatoid arthritis; (3) major depressive disorder; (4) generalized anxiety disorder; and (5) borderline personality disorder. *Id.* at 237.

The Social Security Administration denied Miller's application initially and upon reconsideration. *Id.* at 14. Miller then requested a hearing before an Administrative Law Judge ("ALJ"), who held a hearing on June 4, 2019. *Id.* The ALJ rendered an unfavorable decision, finding that Miller was not under a disability within the meaning of the Social Security Act. *Id.* at 24. The Appeals Council denied Miller's request for review, and she has appealed that decision to this Court. *Id.* at 5.

On December 17, 2021, United States Magistrate Judge Robert P. Myers, Jr. issued a Report and Recommendation [18], recommending that the decision of the

Commissioner should be affirmed. R & R [18] at 22. Miller has filed an Objection [19] to the Magistrate Judge's Report and Recommendation. The Commissioner has filed a Notice [21] of No Response, indicating that it agrees with the findings in the Report and Recommendation. Notice [21].

## II. DISCUSSION

### A. Standard of review

Because Miller has filed an Objection [19] to the Magistrate Judge's Report and Recommendation [18], this Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Longmire v. Gust*, 921 F.2d 620, 623 (5th Cir. 1991) (party filing written objections is "entitled to a de novo review by an Article III Judge as to those issues to which an objection is made") (italics omitted). A court is not required to make new findings of fact in order to conduct a de novo review, *Warren v. Miles*, 230 F.3d 688, 694-95 (5th Cir. 2000), nor is it required to reiterate the findings and conclusions of the magistrate judge, *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993).

In reviewing the decision, the Court "considers only whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports [the] decision." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th

3

Cir. 1992). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). Under this standard, a court cannot "re-weigh the evidence or substitute [its] judgment for that of the Commissioner." *Id.*

To the extent Plaintiff does not object to portions of the Report and Recommendation [18], the Court need not conduct a de novo review of those portions, 28 U.S.C. § 636(b)(1), but need only review those portions to which Plaintiff does not object and determine whether they are either clearly erroneous or contrary to law, *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

B.   <u>Standard for entitlement to Social Security benefits</u>

A claimant must prove that he or she suffers from a disability in order to be qualified for benefits. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The Social Security Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A). The Commissioner employs a five-step sequential process to determine whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a); *see also Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). In this five-step analysis

> the Commissioner considers whether (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents

the claimant from performing past relevant work, and (5) it prevents
him from doing any relevant work.

*Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing 20 C.F.R.

§ 404.1520; *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)). A claimant

bears the burden of proof with respect to the first four steps of the inquiry, then the

burden shifts to the Commissioner at step five. *Newton v. Apfel*, 209 F.3d 448, 453

(5th Cir. 2000).

C.   The Administrative Law Judge's decision

After conducting the hearing, the ALJ issued an adverse decision that Miller

was not disabled within the meaning of the Social Security Act. Admin. R. [12] at

24. At the first step, the ALJ found that Miller had not engaged in substantial

gainful activity after the alleged onset date of August 12, 2016, and at the second

step found that Plaintiff had the following severe impairments: disorders of the

lumbar spine, rheumatoid arthritis, lupus, obesity, anxiety disorder, and major

depression. *Id.* at 16.[1] The ALJ concluded that these "medically determinable

impairments have the singular or combined effect of reducing [Miller's] capacity to

engage in functions required to perform work." *Id.* at 16-17.

At step three, the ALJ determined that Miller's impairments did not meet or

equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

---

[1] The ALJ noted that Miller has also been diagnosed with: gastritis, cystitis, syncope, tonsillitis, dehydration, gastroesophageal reflux disease, gastroenteritis, reactive posterior cervical lymphadenopathy, and left torticollis. Admin. R. [12] at 17. The ALJ found that these were not severe impairments due to the lack of evidence indicating that the "aforementioned conditions persisted at a level that caused more than minimal functional limitations" for a sufficient time period. *Id.* The ALJ also found that Miller's "reported problems with fibromyalgia" did not rise to the level of a severe impairment based on the lack of "documentation of the signs, findings, and evidence that other possible contributors to [Miller's] symptoms were excluded." *Id.*

Appendix 1. *Id*. at 17. The ALJ considered Listings 1.04 for Miller's spinal disorders, 14.09 for Miller's rheumatoid arthritis, 14.02 for Miller's lupus, and 12.04 and 12.06 for Miller's mental impairments, but found that Miller's impairments did not, individually or in combination, meet or medically equal the criteria for these listings. *Id*. at 17-19.[2]

With respect to Miller's mental impairments, the ALJ considered whether either the "paragraph B" or "paragraph C" criteria were satisfied. *Id*. at 18-19. The ALJ found Miller's mental impairments do not cause either one extreme limitation or two marked limitations in a broad area of functioning as defined in paragraph B. *Id*. 18-19.[3] The ALJ further found that the paragraph C criteria were not satisfied due to a lack of evidence indicating that Miller "has minimal capacity to adapt to changes in the environment or to demands that are not already a part of [Miller's] daily life." *Id*. at 19.[4]

Before moving to steps four and five, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to lift, carry, push, or pull [twenty pounds] occasionally and [ten pounds] frequently and to stand, walk, or sit for [six] hours of an [eight]-hour workday. [Miller] also requires a sit/stand opinion [sic] with sitting as much as [one] hour at a time and standing and/or

---

[2] The ALJ recognized that "there is no longer a listing directly applicable to obesity," but found that Miller's obesity standing alone or in combination with her other impairments did not satisfy any listing. Admin. R. [12] at 17.

[3] For Listings 12.04 and 12.06 the paragraph B criteria include the following areas of mental functioning: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. pt. 404, Subpart. P, Appendix 1, pt. A2 § 12.00.

[4] For Listings 12.04 and 12.06 the paragraph C criteria evaluate the claimant's mental disorder to determine whether it is "serious and persistent; that is, there must be a medically documented history of the existence of the disorder over a period of at least two years" and the evidence must satisfy both C1 and C2 of § 12.00(g). *Id*. (internal quotation marks omitted).

walking for up to [fifteen] minutes at a time and can alternate within those parameters during the course of an [eight]-hour day.

*Id*. In addition, the ALJ also found that Miller could not "climb ladders, ropes, or scaffolds" and can only occasionally "climb ramps and stairs, stoop, balance, kneel, crouch, or crawl." *Id*. The ALJ further limited Miller to "simple, routine, and repetitive type work" with no public interaction and limited coworker interaction. *Id*.

In determining the RFC, the ALJ found persuasive the opinion of Dr. Vicki Prosser, Ph. D., which was rendered at the initial disability determination level, *id*. 94-102; 111-118, and was affirmed at the reconsideration level by Dr. Carol Kossman, M.D., *id*. 121-133, that Miller had no more than moderate mental limitations "because it was generally consistent with [Miller's] examination findings and treatment history," *id*. at 22. Conversely, the ALJ found unpersuasive the opinion of Dr. Glenn James, M.D., which was rendered at the initial disability determination level, *id*. at 87-94; 103-110, and was affirmed at the reconsideration level by Dr. Kossman, *id*. 121-133, that Miller had no severe physical impairments based on its inconsistency with Miller's treatment history, *id*. at 22. Instead, as mentioned previously, the ALJ found that Miller's disorders of the lumbar spine, rheumatoid arthritis, and lupus were all severe impairments. *Id*. at 16-17.

The ALJ also found unpersuasive the opinion prepared by Lori A. Seybert, MS, PCMHT, and signed by Dr. Brian Maher, M.D.[5] ("Seybert-Maher" opinion)

---

[5] The Administrative Record and the ALJ's opinion incorrectly refer to Dr. Maher as "Dr. Brian Motus." Admin . R. [12] at 4, 22, 728.

addressing Miller's mental impairments because it failed to reference any specific

evidence and "is inconsistent with the preponderance of the evidence." *Id*. With

respect to Miller's mental functioning, the Seybert-Maher opinion found that Miller

has "poor" functioning, meaning "no useful ability to function, especially on a

sustained basis," in several areas, including

> understanding and remembering very short, simple instructions;
> remembering work-like procedures; maintaining attention for two
> hours; sustaining an ordinary routine without special supervision;
> working with or near others without being unduly distracting;
> completing a normal workweek without interruptions caused by
> psychological symptoms; performing at a constant pace without an
> unreasonable number of rests; accepting criticism from supervisors;
> getting along with coworkers without unduly distracting them or
> exhibiting behavioral extremes; handling normal work stress;
> carrying out detailed instructions; setting realistic goals; dealing
> with stress at a skilled or semiskilled job; maintaining socially
> appropriate behavior; travelling to unfamiliar places; and using
> public transportation.

R & R [18] at 5 (internal quotation and citation omitted); *see* Admin R. [12] at 725-

27. The Seybert-Maher opinion also found that Miller has a "marked" limitation in

her ability to pursue daily living activities; "extreme" difficulty in maintaining

social functioning; "frequent" deficiencies in her concentration, persistence, and

pace; and "repeated" episodes of deterioration or decompensation in work or "work-

like" settings. Admin R. [12] at 727. However, the Seybert-Maher opinion also found

that Miller has a "fair" ability to: "carry out very short and simple instructions;"

"maintain regular work attendance" and punctuality; "make simple work-related

decisions;" "ask simple questions and receive assistance;" and "be aware of," and

avoid, hazards. *Id*. at 725.

8

At step four, the ALJ determined that Miller is unable to perform any of her previous employment positions which involved semiskilled and skilled occupations because Miller's RFC limits her to unskilled work. *Id.* Finally, the ALJ concluded that given Miller's residual functional capacity, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that [Miller] can perform." *Id.* at 23. These include a retail marker, mail clerk, surveillance system monitor, and dowel marker. *Id.* Accordingly, the ALJ determined that Miller was not disabled within the meaning of the Social Security Act. *Id.* at 24. Plaintiff appealed that decision to this Court. Compl. [1].

D.     The Magistrate Judge's Report and Recommendation [18]

On December 17, 2021, the Magistrate Judge entered a Report and Recommendation [18], recommending that the Commissioner's decision should be affirmed. The Magistrate Judge first addressed whether the "medical source statement" prepared by Ms. Seybert and Dr. Maher was a "medical opinion" rendered by a "medical source" as defined by the regulations. R & R [18] at 10 (citing 20 C.F.R. § 404.1513(a)(2)). Based on a plain reading of the regulatory text and in conjunction with other courts' findings on this issue, the Magistrate Judge found that the Seybert-Maher opinion was a statement from a medical source that fell within the definition of a medical opinion. *Id.* at 10-13.

The Magistrate Judge then evaluated whether the ALJ provided an "adequate discussion" of his persuasiveness findings. *Id.* at 16. With respect to the Seybert-Maher opinion, the Magistrate Judge found that the ALJ's explanation of

his persuasiveness findings was "legally sufficient." *Id*. First, the Magistrate Judge noted that the ALJ relied upon Miller's examinations, her reported activities, and her social interactions in finding that the Seybert-Maher opinion was "inconsistent with the remainder of the [A]dministrative [R]ecord." *Id*. at 17. The Magistrate Judge also recognized the ALJ's observation that the Seybert-Maher opinion "did not identify supporting medical records and failed to elaborate on what 'observations [of] and interactions [with]' Miller supported their medical opinion." *Id*. (alterations in original). Based on the factors of supportability and consistency, the Magistrate Judge concluded that the ALJ properly explained his persuasiveness findings. *Id*. at 16-18.

Next, the Magistrate Judge assessed whether substantial evidence supported the ALJ's findings that the Seybert-Maher opinion was unpersuasive, and agreed that the Seybert-Maher opinion "departed significantly from their own medical records." *Id*. 18-19. In addition, the Magistrate Judge found that Miller's hearing testimony, the evaluation conducted by Dr. Michael E. Zakaras, Ph. D., and the opinion of Dr. Prosser all supported the ALJ's finding that the Seybert-Maher opinion was unpersuasive. *Id*. Thus, the Magistrate Judge concluded that substantial evidence supported the ALJ's finding on this issue. *Id*.

Finally, the Magistrate Judge turned to whether the ALJ "played doctor" in rendering his RFC. *Id*. The Magistrate assumed, without deciding, that the ALJ formulated Miller's RFC independently, without relying on an opinion from a medical expert, but found that this fact alone was insufficient to warrant remand.

*Id*. at 20-21. The Magistrate Judge recognized the rule in this Circuit that "even if the ALJ 'played doctor,' the claimant must still demonstrate that the ALJ's error resulted in prejudice." *Id*. at 20 (citing *Keel v. Saul*, 986 F.3d 551, 555 n.3 (5th Cir. 2021)). The Magistrate Judge determined that Miller had failed to establish prejudice because the Magistrate Judge could not conclude that additional evidence might have altered the ALJ's decision. *Id*. at 22.

E.    Plaintiff's Objection [19]

Miller has objected to two specific findings of the Magistrate Judge: (1) that the ALJ properly explained his persuasiveness finding with respect to the Seybert-Maher opinion; and (2) that Miller has not demonstrated prejudice if the ALJ did in fact "play doctor." Obj. [19] at 1-3.

To the extent Miller has not objected to other portions of the Magistrate Judge's Report and Recommendation [18], the Court has considered them and finds that those portions are neither clearly erroneous nor contrary to law. *Wilson*, 864 F.2d at 1221.

1.    The ALJ's persuasiveness findings

a.    Supportability

In her first objection, Miller argues that the ALJ's discussion regarding his persuasiveness findings was inadequate. *Id*. 1. Miller's application for DIB and SSI was filed "on or after March 27, 2017," meaning that the ALJ was required to apply the new regulations. 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ is to address the persuasiveness of the medical opinions from different medical

11

sources. *See* 20 C.F.R. § 404.1520c(b)(2). In assessing persuasiveness, the ALJ

considers five factors: (1) supportability; (2) consistency; (3) the source's relationship

with the claimant; (4) the source's specialty; and (5) "other factors that tend to

support or contradict" the opinion. 20 C.F.R. § 404.1520c(c). The most important

factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Miller objects to the Magistrate Judge's finding that the ALJ's "terse

discussion" of supportability was sufficient. Obj. [19] at 1 (quoting R & R [18] at 17).

For supportability, the regulations provide that "[t]he more relevant the objective

medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) . . ., the more persuasive the medical opinions .

. . will be." 20 C.F. R. § 404.1520c(c)(1). Here, the ALJ's supportability discussion

with respect to the Seybert-Maher opinion is relatively short. Admin. R. [12] at 22.

The ALJ found that the Seybert-Maher opinion "was not supported by reference to

specific evidence or a detailed explanation." *Id*. Albeit briefly, the ALJ succinctly

summarized the Seybert-Maher opinion. *Id*.

The Seybert-Maher opinion constitutes a medical source statement prepared

for the purpose of assessing Miller's mental impairments in connection with her

application for DIB and SSI. Admin. R. [12] at 723, 728. Ms. Seybert, a mental

health clinician, attested that she saw Miller every two to four weeks and relied

primarily on her observations in evaluating Miller's limitations. *Id*. at 723, 726-28.

However, other than Ms. Seybert's observations, there is no medical evidence cited

in this opinion, *id*. at 725-27, and the opinion does not even reference Ms. Seybert's

own treatment records of Miller, *see id.* at 608-618, 759-782. Moreover, the Seybert-Maher opinion provides almost no explanation to support its findings. *Id.* at 726-728.

The Court finds that, although terse, the ALJ sufficiently described his findings on the supportability of the Seybert-Maher opinion. The ALJ noted that there was little objective medical evidence in the medical source statement due its lack of reference to specific evidence. Furthermore, the ALJ found that Ms. Seybert's one-line explanations that her findings were based on her observations and interactions were inadequate. The ALJ appropriately articulated "an accurate and logical bridge between the evidence" and his supportability finding, from which this Court can conclude that the ALJ's supportability finding is supported by substantial evidence. *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010); *see also Tischler v. Kijakazi*, 4:20-cv-0721-P, 2021 WL 5832843, at *3 (N.D. Tex. Dec. 9, 2021) (finding the ALJ's decision to reject an opinion was supported by substantial evidence when the basis for the ALJ's supportability findings was lack of support from the doctor's own treatment records).

b.    Consistency

Miller also appears to argue that the ALJ's consistency findings were insufficient. Obj. [19] at 1-2.[6] Specifically, Miller contends that the ALJ erred in relying on benign mental status findings to conclude that the Seybert-Maher

---

[6] Miller does not explicitly reference the consistency factor, but the Court liberally construes her argument as challenging the ALJ's decision with respect to this factor. *See* Obj. [19] at 1-2 (citing the ALJ's consistency finding).

opinion had little relationship to their records. *Id.* at 1. Miller directs the Court to Listing 12.00(c)(2), which lists twelve different medical sources that the Social Security Administration will consider in assessing a claimant's mental impairments, and argues that the ALJ and the Magistrate Judge placed too much weight on Miller's mental status examination findings. *Id.* at 2.

With respect to consistency, the regulations provide that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ found that the Seybert-Maher opinion was "inconsistent with the preponderance of the evidence including the examination findings, reported activities, and documented social interactions" detailed earlier in his findings. Admin. R. [12] at 22.

The ALJ considered each of the paragraph B criteria for mental functioning in assessing Miller's mental impairments and found that she had only a mild or moderate limitation in her ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. pt. 404, Subpart. P, Appendix 1, pt. A2 § 12.00(A)(2)(b); *see* Admin R. [12] at 18-19. In making his findings, the ALJ considered Ms. Seybert's treatment records, a mental status examination performed by clinical psychologist Michael E. Zakaras, Ph.D., and a functionality report filled out by Miller. Admin. R. [12] at 18-19 (citing Admin. R. [12] at 262-269, 612-618, 708-710, 726-758, and 759-782).

Conversely, the Seybert-Maher opinion found that Miller had "poor," "marked," or "extreme" limitations in these categories. *Id*. at 725-727. These findings conflict with Ms. Seybert's own treatment records, which indicate that during her initial assessment performed on June 14, 2017, she found Miller displayed "appropriate" speech, behavior, appearance, affect, memory, judgment and insight. Admin R. [12] at 612. Only once in her subsequent treatment history did Ms. Seybert find that Miller's mental functions did not rise to the appropriate category in these areas. *Id*. at 614. Ms. Seybert's treatment records also reveal that she found Miller was always oriented to place, time, person, and situation, *id*. at 612-614, and she consistently noted that Miller was neatly or appropriately dressed, was cooperative, displayed organized thinking, and displayed average attention and concentration, *id*. at 768, 772.

Based on Ms. Seybert's own treatment records, the Court finds that the ALJ's consistency finding is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez*, 415 F.3d at 461 (quoting *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)). In applying this standard, "the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Id*. (citations omitted). Here, sufficient evidence exists in the Administrative Record to support the ALJ's consistency finding as to the Seybert-Maher opinion. Ms. Seybert's own treatment records are inconsistent with many of the mental functioning findings in the

15

medical source statement prepared by Ms. Seybert and signed by Dr. Maher. This is sufficient evidence from which "a reasonable mind" might conclude that the Seybert-Maher opinion is inconsistent with the Administrative Record as a whole. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021).

Miller's argument that the ALJ and the Magistrate Judge erred in relying on one source of mental health evidence provided by Listing 12.00(C)(2) to determine consistency is unavailing. For this listing, the regulations provide that the Commissioner "will determine the extent and kinds of evidence we need from medical and nonmedical sources based on the individual facts about your disorder." 20 C.F.R. pt. 404, Subpart. P, Appendix 1, pt. A2 § 12.00(C)(1). The regulations go on to explain that "all relevant medical evidence about your disorder" will be considered and they list "[e]vidence from your medical sources [that] *may* include," twelve different types of mental health evidence. *Id.* at § 12.00(C)(2)(c) (emphasis added). Miller argues that the ALJ and the Magistrate Judge placed too much reliance on Miller's mental status findings and failed to consider other evidence contemplated by Listing 12.00(C)(2), including Miller's "symptoms, treatment, diagnosis, medication, and clinical course," in assessing consistency. Obj. [19] at 2.

Listing 12.00(C)(2) explicitly provides that the Administration "may" consider several forms of "evidence" in evaluating the claimant's mental disorder. 20 C.F.R. pt. 404, Subpart. P, Appendix 1, pt. A2 § 12.00(C)(1). Thus, the fact that the ALJ may not have addressed all of the categories of evidence set forth in this rule is insufficient to show that his consistency finding was not supported by substantial

evidence. Instead, as the Court has found, the ALJ's conclusion that the Seybert-Maher opinion was unpersuasive is supported by substantial evidence in the form of Ms. Seybert's own treatment records. *See* Admin. R. [12] at 612-618, 759-782.

Miller claims that the ALJ had an "obligation to consider the other probative evidence [in the record] and explain his reasons for rejecting evidence in favor of the claimant." Obj. [19] at 2 (citing *Rangel v. Astrue*, H-07-1959, 2008 WL 8053471, at *6 (S.D. Tex. June 27, 2008)). However, the Fifth Circuit has clarified that the ALJ is only obligated to explain his reasons for rejecting probative evidence in a claimant's favor when "rejecting the claimant's subjective complaints of pain." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *see also Herrera v. Comm'r of Social Sec.*, 406 F. App'x 899, 905-906 (5th Cir. 2010). Here, the ALJ specifically considered Miller's testimony concerning the "intensity, persistence and limiting effects" of the symptoms caused by her impairments and found that it was "not entirely consistent with the medical evidence and other evidence in the record." Admin. R. [12] at 20. The ALJ then explained in detail how Miller's testimony regarding her symptoms differed from her examination findings and treatment records. *Id.* at 20-21. As such, the ALJ did not commit an error in making his consistency findings.

In sum, the Court finds that the ALJ articulated his persuasiveness findings by assessing the supportability and consistency of the Seybert-Maher opinion, and that the ALJ's persuasiveness findings are supported by substantial evidence in the record. Miller's objection on this point should be overruled.

2.  <u>Prejudice</u>

Miller's second objection is that the Magistrate Judge erred in finding that if the ALJ did in fact "play doctor," she suffered no prejudice. Obj. [19] at 2. Under the regulations, the ALJ is charged with the responsibility for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 n.26 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546). "In doing so, an ALJ examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records." *Webster*, 19 F.4th at 718 (citation omitted).

However, in making an RFC determination "an ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) (citing *Ripley*, 67 F.3d at 557). As such, it is impermissible for an ALJ to "rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Id*. Stated differently, an ALJ may not independently decide how a claimant's impairments affect her ability to work "without obtaining an opinion from a medical expert." *Keel*, 986 F.3d at 555 n.3. (citation omitted).[7]

To warrant reversal and remand, a claimant must prove that she was prejudiced by the ALJ's failure to properly assess her RFC. *Id*. (citing *Ripley*, 67 F.3d at 557). A claimant may establish prejudice by demonstrating that she "could and would have adduced evidence that might have altered the result." *Carey v.*

---

[7] This error is typically referred to as a "*Ripley*" error." *See Keel*, 986 F.3d at 555 n.3.

*Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (quoting *Kane v. Heckler,* 731 F.2d 1216,

1220 (5th Cir. 1984)). However, "[a] mere allegation that additional beneficial

evidence might have been gathered had the error not occurred is insufficient to

meet this burden." *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012).

Miller contends that, contrary to the Magistrate Judge's finding, her

testimony is inconsistent with the ALJ's RFC. Obj. [19] at 2-3. Miller testified at the

hearing before the ALJ that she can only sit for thirty to forty-five minutes at a

time and she can only walk "up one side of Walmart and by the time I'm on my way

back, I can barely make it out of the store." Admin. R. [12] at 81. However, in

formulating his RFC, the ALJ found that Miller could perform work at a light level

but required a "sit/stand opinion [sic] with sitting as much as [one] hour at a time

and standing and/or walking for up to [fifteen] minutes at a time." *Id*. at 19. At the

hearing, the ALJ posed a hypothetical to the vocational expert that incorporated

these sit/stand limitations as well as the other limitations set forth in the ALJ's

RFC, *id*. at 19, to determine whether there are any jobs that exist in the economy

that Miller can perform, *id*. 83. Based on the ALJ's hypothetical, the vocational

expert articulated several jobs that a person with Miller's limitations could perform.

*Id*. at 84. Miller argues that she was prejudiced by the ALJ's failure to pose "a

complete hypothetical," which she asserts would have included her "self-reported"

limitations. Obj. [19] at 3.

The Court need not reach Miller's prejudice objection because it finds that the

ALJ's RFC was supported by substantial evidence. As the Fifth Circuit has

explained, a challenge to an ALJ's determination of the claimant's RFC based on a *Ripley* error is essentially an argument that the ALJ's RFC is not supported by substantial evidence. *Keel*, 986 F.3d at 555 n.3. In effect, Miller contends that the ALJ's one-hour sitting and fifteen-minute standing limitations were formulated based on his own unsupported opinion and contrary to her own testimony.

The ALJ's opinion explicitly recognized Miller's testimony that her physical impairments limited her ability to stand and sit for extended periods. *See* Admin. R. [12] at 20. As discussed previously, the ALJ concluded that Miller's statements "concerning the intensity, persistence and limiting effects" of the symptoms caused by her physical and mental impairment were not "entirely consistent with the medical . . . and other evidence in the record." *Id*. The ALJ noted that Miller's treatment records showed "normal muscle tone and strength," as well as "no acute distress, normal extremity range of motion, normal sensation, no motor deficits, no focal neurological deficits, 5/5 strength in all extremities, and [a] steady gait." *Id*. (citing Admin. R. [12] at 444-60, 461-81, 482-597, 642-703, and 726-58). From these records, the ALJ determined that Miller "retain[ed] a substantial degree of physical capability consistent with the light level of work stated in the residual functional capacity assessment." *Id*. at 21.

From the record it is clear that the ALJ did not "play doctor" and formulate Miller's RFC based on his own opinion. The ALJ articulated his RFC after considering Miller's testimony, assessing her subjective symptoms, and reviewing her medical records from 2016 to 2019. *See id*. at 19-21. The ALJ determined that

the limiting effects of Miller's impairments did not match her medical records, and as a result his RFC provided a stand/sit limitation in excess of Miller's testimony. This credibility assessment "is a task particularly within the province of the ALJ." *Clary v. Barnhart*, 214 F. App'x 479, 482 (5th Cir. 2007) (quoting *Harrell v. Bowen,* 862 F.2d 471, 480 (5th Cir. 1988)).

Moreover, the ALJ's RFC is supported by substantial evidence. As explicitly referenced in the ALJ's decision, Miller's medical records indicate that she displayed normal muscle tone and strength, as well as a normal gait and station, Admin. R. [12] at 456, 498, and the ALJ relied on this medical information in determining Miller's RFC, *id.* at 19-20. The Court finds that this is evidence from which "a reasonable mind" could conclude that Miller could sit and stand in excess of the limits to which she testified. *Webster*, 19 F.4th at 718. Accordingly, the ALJ's RFC was supported by substantial evidence and Miller's objection should be overruled.

Alternatively, even if the ALJ's RFC was not supported by substantial evidence, Miller has not demonstrated that she has been prejudiced. To show prejudice, Miller argues that the ALJ did not pose a "complete hypothetical" to the vocational expert who testified at the hearing. Obj. [19] at 3. "An ALJ's hypothetical is 'defective unless: (1) it incorporates reasonably all disabilities of the claimant recognized by the ALJ, and (2) the claimant or his representative is afforded the opportunity to correct deficiencies in the hypothetical.'" *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (alterations omitted).

Here, the record reflects that the ALJ incorporated reasonably all of Miller's disabilities he recognized into the hypothetical posed to the vocational expert. *See* Admin. R. [12] at 83. Miller's counsel did not object to the physical limitations used by the ALJ and only added mental and psychological limitations to the hypothetical posed to the vocational expert. *See id.* at 85. Because Miller's counsel was allowed to question the vocational expert, the Court concludes that the ALJ's hypothetical was not defective. Even assuming *arguendo* that the ALJ's hypothetical was deficient, Miller's counsel was presented with an opportunity to "correct any perceived deficiencies" in the physical limitations utilized by the ALJ in his hypothetical. *See Wise v. Barnhart*, 101 F. App'x 950, 951 (5th Cir. 2004) (holding that there was no reversible error where the claimant's representative was afforded the opportunity to "correct any perceived deficiencies" in the ALJ's hypothetical). That is all that is required in this Circuit, and Miller cannot show that she was prejudiced by the ALJ's hypothetical. *See Hardman*, 820 F.3d at 150 (holding that a hypothetical was not defective where the claimant's counsel was allowed to correct any deficiencies and did not object to limitations posed to the vocational expert); *Vaught v. Astrue*, 271 F. App'x 452, 456 (5th Cir. 2008) (finding no error where "the ALJ provided [claimant] with the opportunity at the hearing to question the vocational expert; that is, [claimant] could have corrected any errors in the hypotheticals, or added additional disabilities, during the hearing").

## III.   CONCLUSION

As required by 28 U.S.C. § 636(b)(1), the Court has conducted an independent de novo review of the record and those matters raised in Plaintiff Brandy Jan Donaldson Miller's Objection [19], and concludes that Plaintiff's Objection [19] should be overruled. The Court further concludes that the Magistrate Judge's Report and Recommendation [18] should be adopted as the finding of the Court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Objection [19] filed by Plaintiff Brandy Jan Donaldson Miller in this case is **OVERRULED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Magistrate Judge's Report and Recommendation [18], entered in this case on December 17, 2021, is **ADOPTED** as the finding of this Court.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the decision of the Commissioner of Social Security is **AFFIRMED** and Plaintiff Brandy Jan Donaldson Miller's appeal is **DISMISSED WITH PREJUDICE**. The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 24th day of February, 2022.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE